Kevin Slackford
Reg. No. 86322-053
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320
**Pro se**



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Keven Slackford, )<br>    Plaintiff, )<br> )<br>    v. )<br> )<br>United States of America, )<br>Dr. Limberkar, )<br>Dr. S. McGann, )<br>PA-C K. Knowles, )<br>Dr. A. Lopez, )<br>    Defendants. ) | No. _____<br><br>**VERIFIED COMPLAINT**<br>**BY PRISONER** |

## I.   JURISDICTION

1.   Jurisdiction of this Court, over the United States of America is invoked pursuant to 28 U.S.C. §1346; Federal Tort Claims Act.

2.   Jurisdiction of this Court, over Dr. Limberkar, Dr. S. McGann, PA-C K. Knowles, and Dr. A. Lopez, in their individual and official capacities for the constitutional violations is invoked pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 338 (1971); 28 U.S.C. §1331.

## II.   PARTIES

3.   Plaintiff, Kevin Slackford, at all relevant times was incarcerated at Federal Correctional Institution - Fairton, New

1

Jersey.

4.   Defendant, United States of America, at all relevant times employed staff at Federal Correctional Institution - Fairton, New Jersey.

5.   Defendants, Dr. Limberkar, Dr. S. McGann, PA-C K. Knowles, and Dr. A. Lopez, at all relevant times were employed at Federal Correctional Institution - Fairton, New Jersay.

## III.    PREVIOUS LAWSUITS

6.   Plaintiff has not filed a law suit in any United States District Court.

## IV.    ADMINISTRATIVE REMEDIES

7.   Plaintiff has fully exhausted both informal and formal resolution through the BOP's administrative remedy and appeals program.

## V.    RELEVANT FACTS

8.   On March 22, 2019 Slackford was assigned to the top bunk, cell 412 in C-Right Unit.

9.   On March 22nd, Slackford rolled off the top bunk while sleeping and as a result he hit his right shoulder on the tiled floor.

10.   The distance from the tiled floor to the top bunk is 63

2

inches.

11. On March 23, 2019 Slackford submitted a sick-call request to Health Services (H.S.) to be seen for his injury.

12. On March 25, 2019 Slackford was seen by Dr. S. McGann in H.S.

13. McGann prescribed ibuprofen for Slackford's pain, ordered x-rays of his right shoulder, and denied a bottom bunk pass to prevent future falls.

14. On March 26, 2019 five (5) x-rays were taken of Slackford's right shoulder.

15. Ibuprofen was not immediately given to Slackford.

16. Between March 27 and April 13, 2019 Slackford questioned various H.S. staff, daily about the Ibuprofen Dr. McGann prescribed but he had not received.

17. On April 15, 2019 Slackford was seen by Dr. Limberkar, wherein Slackford reported that it felt like his bone was sticking out of his shoulder.

18. Slackford also told Dr. Limberkar that he had a pain level of 10 and sharp pain every time he moves his arm.

19. Limberkar told Slackford that the analysis of the x-rays showed there was nothing wrong, it was probably just a sprain, and he would prescribe Motrin.

20. On April 16, 2019, 26 days after his fall, Slackford for the first time received 21 tablets of Ibuprofen 600mg.

21. On April 16th Slackford purchased 14 double packets of Ibuprofen 200mg and 14 Tylenol single packets from commissary.

22. On April 22, 2019 Slackford turned in his empty Ibuprofen

3

600mg pouch to H.S. staff to obtain a refill.

23. Between April 23, and April 28, 2019 Slackford expressed his continual pain and questioned daily why he was not receiving a refill of his pain medication.

24. On April 28, 2019 Slackford spoke with Health Services Administrator (HSA) CDR Murphy questioning why he had not received a refill of his pain medication.

25. Murphy told Slackford that "they're just going to tell you to get them off commissary."

26. On April 29, 2019 Slackford spoke with Dr. Limberkar about why he had not received a refill of his pain medication.

27. Limberkar told Slackford "no refills. BOP won't allow it. Buy it off commissary."

28. Slackford informed Limberkar that the medication on commissary is not strong enough, that his shoulder still hurts, and there is still a lump that will not go away.

29. Limberkar shrugged his shoulders and walked off.

30. On May 2, 2019 Slackford purchased 1 bottle of 200 ct. Ibuprofen 200mg from commissary.

31. On May 5, 2019 Slackford submitted an electronic cop-out about his shoulder pain, immobility, and need to be seen again.

32. On May 6, 2019 Slackford submitted a paper cop-out and placed it in the sick-call box in medical.

33. On May 15, 2019 Slackford was seen by Dr. Limberkar, wherein Slackford reported continuing pain from his shoulder.

34. On May 15th Limberkar told Slackford he had to buy pain medication off commissary, which Salckford was already doing.

4

35. During the May 15th medical encounter the following exchange occurred:

Limberkar: Do you have kids.

Slackford: Yes, I have three.

Limberkar: Okay. So, don't worry about your shoulder, it'll get better on its own. It'll get better overtime. Focus on getting home to your kids and doing the right thing

36. Dr. Limberkar then prescribed Slackford medication to treat depression, but nothing to treat his reported continual shoulder pain.

37. On May 16, 2019 Slackford purchased, one (1) bottle of 200 ct. Ibuprofen 200mg from commissary.

38. On May 17, 2019 Slackford saw HSA CDR Murphy and told him about his constant shoulder pain and what Dr. Limberkar said at the May 15th encounter.

39. On May 23, 2019 Slackford had an encounter with H.S. RN Hess, wherein Slackford told her his shoulder felt out of place, it hurt everyday, and H.S. was saying that his x-rays came back with nothing wrong.

40. Hess told Slackford that x-rays do not always show everything and that he probably needed an MRI. Asking how he gets one, Hess said he had to keep complaining.

41. On May 24, 2019 Slackford submitted a sick-call stating that the bone is out of place and if the x-ray is not showing it, I need an MRI.

42. On June 13, 2019 Slackford was seen by Dr. McGann, wherein

Slackford explained that it had been three (3) months since his injury, it hurt everyday when he moves it - burning, throbbing, steady pain, he can't sleep, Ibuprofen isn't working, and he's not getting better.

43. Dr. McGann told Slackford that the x-rays were unremarkable - probably just a bruise.

44. Slackford questioned whether the problem may be deeper than an x-ray can see and if he needed an MRI because he wanted his shoulder fixed.

45. McGann told Slackford that she "can't fix something that isn't broken," and put Slackford on recreation restriction for five months.

46. On July 11, 2019 Dr. Limberkar saw Slackford. During this encounter Limberkar would not look at the lump on Slackford's shoulder, just told him there was no fractures on the x-ray and to keep using Ibuprofen; it will heal overtime.

47. On July 28, 2019 Slackford sent an electronic cop-out to HSA CDR Murphy about constant pain in his shoulder, asking that his problem be properly evaluated and corrected.

48. On July 30, 2019 Slackford submitted a paper sick-call about continual pain and to discuss healthcare treatment.

49. On August 15, 2019 Slackford was seen by Dr. McGann, wherein he informed her that he was still having problems with his shoulder - there's pain with range of motion, it cracks when he moves it certain ways and it's been five (5) months and his shoulder was not getting better.

50. During the August 15th encounter the following exchange

6

occured:

McGann:  We've already been over this.

Slackford:  I know you guys keep telling me there is nothing wrong with me, but if that was the case, I wouldn't be in constant pain and keep coming down here complaining about my shoulder.

McGann:  My bones crack too. It's normal. There is a lump on your other shoulder too.

Slackford:  There is something wrong inside my right shoulder.

McGann:  Where have you been getting your Ibuprofen from? You haven't been buying them on the commissary.

Slackford:  I bought them in April and May, just after this all started. I have receipts. They're doing nothing.

McGann: There is no tear and there is nothing I can do for you.

51.  On September 18, 2019 Slackford submitted a sick-call about a pellet in his neck that had been causing pain, stating that it might need to come out, and asking that he be seen.

52.  On October 8, 2019 Slackford was seen in the housing unit by an unknown H.S. staff, wherein Slackford informed him about the pellet in his neck, that it had been hurting, and about his shoulder situtaion.

53.  The H.S. staff felt for the pellet in Slackford's neck, said he would order tests to see exactly what it was, and to put in a sick-call for his shoulder.

54.  On October 11, 2019 Slackford submitted a sick-call for his

7

shoulder.

55. On October 15, 2019 Slackford was seen by Dr. McGann under Chronic Care for his depression, wherein Slackford informed her that his shoulder was still acting up, hurting, and not getting better.

56. McGann told Slackford to put in a sick-call for his shoulder, wherein Slackford told her he just did over the weekend. McGann said okay they would call him down for it.

57. Slackford also told McGann about the pain caused by the pellet in his neck, wherein McGann felt it and told him not to worry about it, that it will work itself out.

58. On October 31, 2019 Slackford was seen by PA-C K. Knowles, wherein the following exchange occurred:

> Knowles: They're not going to run a test on the pellet in your neck because it's been there so long - it's preexisting - so there is nothing they can do about it.
>
> Slackford: The pellet hurts every time it is touched, but it did not hurt in the past.
>
> Knowles: You'll have to go to the commissary for Ibuprofen for now. Maybe when you go home you can get it taken out.
>
> Slackford: That's still a long time away.

59. Knowles checked and confirmed that Slackford had limited range of motion in his shoulder, wherein Slackford informed him that there was a sharp pain when his shoulder was moved a certain way.

60. Knowles told Slackford that maybe he could get a shot of

8

Cortisone," but H.S. "didn't like to do MRI's because they are so expensive."

61. On November 5, 2019 Slackford was seen by Knowles, wherein Knowles informed him H.S. was not going to do anything for his shoulder because Slackford had not followed their recommendation to buy Ibuprofen from commissary.

62. Slackford informed Knowles that he had bought Ibuprofen from commissary and would bring the receipts back to H.S.

63. On November 13, 2019 Slackford obtained the receipts for each time he had purchased pain medication from commissary.

64. On November 14, 2019 Slackford saw HSA CDR Murphy, wherein Slackford told him about the Cortisone shot and now H.S. was not going to do it because he supposedly did not buy Ibuprofen. Murphy told Slackford to send him an email and he would talk with Dr. McGann.

65. On November 14, 2019 Slackford submitted another sick-call about his shoulder pain.

66. On November 15, 2019 Slackford sent the email Murphy asked for.

67. On November 26, 2019 Slackford submitted a sick-call requesting pain medication.

68. On December 2, 2019 Slackford was seen by Dr. McGann, wherein the following exchange occured:

> Slackford: I'm still having pain in my shoulder.
>
> McGann: I talked to Mr. Murphy and he said you thought you were getting an injection in your arm.
>
> Slackford: Yes. I talked to PA-C Knowles and he mentioned

9

to me that a shot of Cortisone in my shoulder could have been a possibility. Now that's what I'm interested in because I hear that it's a steroid that will get rid of the pain for 6 - 9 months. But, then I came to Knowles again and he said that I can't get the shot because I haven't followed the recommendations to buy Ibuprofen off commissary. I did and I have the receipts in my pocket, would you like to see them?

McGann:  No. You can't just buy them once. You have to keep buying them.

Slackford:  I bought them 3 times in a row and they weren't working. They were only hurting my stomach. I'm not going to keep wasting my money on something that isn't doing anything. I need another option.

McGann:  There are other options on the commissary.

Slackford:  Well, what can you give me. I'm indigent.

McGann:  I'll give you Naproxin. Pick it up at pill line tomorrow afternoon. Try the Naproxin and see how it works and we'll go from there.

69.  On December 3, 2019 Slackford picked up the pain medication. It was 30 tablets of Naproxin 500mg.

70.  On March 11, 2020 Slackford put in a sick call to discuss pain management options as he was still going through pain in his shoulder and over-the-counter medications didn't help.

71.  March 24, 2020 PA K. Fuller examined Slackford, wherein she heard Slackford's shoulder crack, seen and felt the disformity on his shoulder and said "I think it could be your A.C. joint."

10

72. Fuller explained that an MRI and surgery may not help at all with the pain Slackford had been feeling and in most cases it may make the pain worse.

73. Slackford told Fuller that since he hurt his shoulder he has not been able to do pullups or burpies without extreme pain and that it was not getting better.

74. Slackford also told Fuller that if after an MRI surgery was needed to properly treat his injury, then that is what he wanted. As of then there was something wrong with his shoulder and he stated he was never given proper medical treatment.

75. On April 12, 2020 Slackford submitted a sick-call, requesting pain medication because he was indigent.

76. On June 11, 2020 Slackford submitted a sick-call about the pellet in his neck notifying H.S. that it was still hurting him really bad since the last time, requesting that it be removed.

77. On July 14, 2020 PA-C Knowles saw Slackford in the housing unit, wherein Slackford told Knowles that he was still experiencing pain from the pellet in his neck and said that it needed to come out and gave Knowles another sick-call request.

78. On August 2, 2020 Slackford was seen by PA-C Knowles, wherein he told Slackford there was nothing H.S. can do about the pellet in his neck because it is in a very complicated area and that Slackford would need a surgeon to get it out. Knowles finally stated that they don't do that sort of thing at the prison.

79. During the August 2nd encounter the following exchange occured:

11

> Slackford: The pellet is very sensitive and causing constant pain.
>
> Knowles:  You're just going to have to deal with the uncomforability until you eventually go home and you're able to go to a surgeon.

80.  On August 19, 2020 Slackford was seen by Dr. A. Lopez, wherein Slackford told her about the pellet in his neck. Lopez squeezed the pellet until Slackford was almost in tears from the pain.

81.  On August 19th The following exchange occurred:

> Slackford:  It hurts bad. I need it out.
>
> Lopez: I've done one like this before, but I will not take this one out. It's in a bad spot.

Slackford also told Lopez about his shoulder injury after falling from the top bunk.

82.  Lopez looked at the x-ray results and said there is something wrong with Slackford's right shoulder but it's from repetitive motion, and exercise overtime, commenting that it can't be fixed; It's something Slackford would have to deal with.

83.  Lopez prescribed Slackford a different medication for pain and said to try that for 30 days and follow up.

84.  Lopez also told Slackford that an MRI or scan would not be ordered.

85.  On August 21, 2020 Slackford received one (1) weeks worth of Meloxicam 7.5mg.

86.  On August 27, 2020 two x-rays of the pellet in Slackford's neck were taken.

12

87.  Contract Radiologic Tech M. Orange commented that sometimes it is just better to leave it alone if it is not really doing anything.

88.  Slackford informed Orange that it causes constant pain and that it even hurts when he swallows.

89.  On August 28, 2020 Slackford informed RN Anderson and RN Nguyen that his Maloxicam had run out and he did not receive a refill. Both said that they would check on it.

90.  On August 29, 2020 Slackford spoke to RN Cooke about not receiving his refill of Maloxicam. She said he would have to put in a sick-call to the pharmacy.

91.  On August 29th Slackford put a sick-call into the pharmacy, in addition to Dr. Lopez stating that he would follow her recommendation and finish the 30 days of Maloxicam even though it is not working well, but he hasn't been receiving it.

92.  On September 2 & 4, 2020 Slackford spoke with PA-C Knowles informing him that the Maloxicam did not really work, asking what is the next step.

93.  Knowles told Slackford that sometimes there is no way to cure chronic pain. Slackford said that they don't even know what is wrong with it and that he needed an MRI and to get it fixed. Knowles told Slackford that he would talk to Dr. Lopez.

94.  On September 17, 2020 PA Fuller saw Slackford, wherein the following exchange occurred:

> Slackford: I'm still in constant pain. It's been for the past year and a half. I'm not betting getter. You guys tried three (3) different types of medication. None of

13

them work.

Fuller:  You have full range of motion and strength. No surgeon is going to disturb that. Sometimes there is no cure for the pain, only medication.

Slackford:  I want an MRI.

Fuller:  An MRI is just to confirm what we already believe to be the problem.

95.  When Slackford persisted on getting an MRI, Fuller said she would speak with Dr. Lopez to see what she wants to do to move forward because they've already done everything they could.

96.  During the September 17th encounter with Fuller, Slackford was told that they could see the pellet in the x-ray but could not tell how deep it was. Slackford said that caused him pain too. Fuller said she didn't know what they're going to do about the pellet and sent him back to his cell.

97.  On September 23, 2020 Slackford saw PA-C Knowles and told him that his shoulder really hurt, asking why they won't help him. Slackford requested an MRI, treatment for his shoulder, and told Knowles that the pain medications do not have an effect. Knowles said that he didn't know what the treatment plan was but he would look into it.

98.  On October 19, 2020 Slackford saw Knowles and asked if his name was on the sick-call list. Knowles informed Slackford that he would be called out that week and should get pain management.

99.  On October 22, 2020 Slackford saw PA Fuller, wherein Ms. Hall, a physical therapist from Butner institution interviewed him by Telahealth. Hall had Slackford do different movements as

14

Fuller guided him through the evaluation of pain, strength, and range of motion.

100. Hall wanted Slackford to do exercises to strengthen the muscles around the joint to help with the pain. She also acknowledged that there was something wrong with his shoulder.

101. On October 28, 2020 PA Fuller came to the housing unit and gave Slackford a list of exercises for his shoulder.

102. On November 3rd, 2020, January 9th, and February 3rd, 2021 Slackford submitted sick-call requests reporting continual pain in his shoulder.

103. On February 11, 2021 Physical Therapist Hall followed up with Slackford, wherein he informed her that he felt like the exercises was causing more pain and only one of the exercises were bearable. Hall had Slackford do additional movements and since there was no improvement she recommended a Cortisone injection and an MRI.

104. On February 23, 2021 Slackford was seen by ARNP Hansen who said H.S. requested an MRI and injection but the MRI was later canceled due to the pellet in Slackford's neck and a CT scan was scheduled.

105. On April 9, 2021 Slackford submitted a sick-call reporting continual pain.

106. On June 3, 2021 Slackford was taken out to Inspira Health, wherein a CT scan without contrast was conducted on his right shoulder. The findings were:

> "There are several well corticated fragments adjacent to the distal clavicle in keeping with an old injury. There

15

> is also some associated widening of the acromioclavicular joint measuring approximately 9-10mm suggestive of underlying ligametous injury."

107. On June 4, 2021 Slackford was taken out to Premier Orthopedic Associates, wherein the Orthopedist gave him a shot of Cortisone in his right a.c. joint, right shoulder, and found:

> "There is minor elevation at the distal clavicle of the right a.c. joint. There is tenderness to palpation of the a.c. joint. There is crepitus papated during range of motion. He has a positive crossarmadduction test. There is tenderness of the a.c. joint or Hawkins maneuver... He had decreased pain after diagnostic/therapeutic injection performed."

108. The Orthopedist wanted Slackford to follow up in four weeks for possible surgery referral if the injection didn't maintain a lessor pain level.

109. On June 7, 2021 Slackford experienced increased cracking in his right shoulder.

110. On August 3, 2021 Slackford submitted a sick-call informing H.S. that he was still having pain in his shoulder and requested a follow up with the Orthopedist.

## VI.   CAUSES OF ACTION

A.   Dr. Limberkar was deliberately indifferent to Slackford's serious medical need.

16

i.  Slackford exhibited a serious medical need as he reported that he had fallen from the top bunk, which is 63" above the floor, hitting his right shoulder on the tiled floor. Slackford's medical need is serious as he expressed significant pain.

ii.  Dr. Limberkar knew of Slackford's risk of serious harm as he was one of his treating physicians and Slackford reported continual pain, at times describing a sharp pain of 10 on a scale of 1 - 10.

iii.  Dr. Limberkar was both aware of facts from which inferences could be drawn that a substantial risk of serious harm existed and drew those inferences as he was the licensed treating doctor. Dr. Limberkar instead intentionally refused to provide medical treatment, delayed necessary medical treatment based on non-medical reasons, or prevented Slackford from receiving medical treatment when:

1)  On 4/15/19 Slackford informed Dr. Limberkar that his pain was sharp and level of 10;

2)  On 4/16/19 Limberkar only prescribed 21 tablets of Ibuprofen 600mg.

3)  From 4/23/19 through 4/28/19 Slackford expressed continual pain to H.S. staff, daily questioning why he could not receive a refill and on 4/28/19 was told by HSA CDR Murphy that the doctor is just going to tell Slackford to buy pain medication off commissary;

4)  On 4/29/19 Dr. Limberkar told Slackford "No

17

refills, BOP won't allow it. Buy it off commissary." And when Slackford told Dr. Limberkar that the commissary medication was not strong enough and his shoulder still hurt, He shrugged his shoulders and walked off; and

5) On 5/15/19 Slackford complained to Dr. Limberkar about continual pain, and Limberkar just told him to buy medication from commissary. When Slackford informed Dr. Limberkar that he was already purchasing Ibuprofen, Dr. Limberkar asked if Slackford had children, instructing Slackford to worry about them, and his shoulder would heal itself. Dr. Limberkar prescribed Slackford medication for depression but nothing for his shoulder pain.

B. Dr. McGann was deliberately indifferent to Slackford's serious medical need.

i. Slackford exhibited a serious medical need as he reported that he had fallen from the top bunk, which is 63" above the floor, hitting his right shoulder on the tiled floor. Slackford's medical need is serious as he expressed significant pain.

ii. Dr. McGann knew of Slackford's risk of serious harm as she was one of his treating physicians and Slackford reported continual pain, describing it as burning, throbbing, steady pain, hurting every day, affecting his

18

sleep, and Ibuprofen was not working.

iii.   Dr. McGann was both aware of facts from which inferences could be drawn that a substantial risk of serious harm existed and drew those inferences as she was the licensed treating doctor. Dr. McGann instead intentionally refused to provide medical treatment, delayed necessary medical treatment based on non-medical reasons, or prevented Slackford from receiving medical treatment when:

1) On 3/23/19 Dr. McGann denied Slackford's request for a bottom bunk pass to prevent future falls;

2) On 6/13/19 Dr. McGann saw Slackford and he expressed that his shoulder hurt every day, the pain was burning and throbbing, that he could not sleep, and Ibuprofen was not working;

3) On 6/13/19 Dr. McGann told Slackford that his shoulder was probably just bruised and when Slackford commented that the problem may be deeper than a x-ray could see and requested an MRI, McGann said she could not fix something that was not broken and put Slackford on recreation restriction for 5 months but did not address his pain;

4) On 8/15/19 McGann saw Slackford and he told her that he still had pain with range of motion, his shoulder cracks and it had been 5 months since his injury. Slackford also expressed that he would not keep coming up to H.S. complaining if he was not in

19

constant pain. Dr. McGann told Slackford that her bones crack too, that it was normal and questioned where he was buying his Ibuprofen. When Slackford told Dr. McGann that he had bought Ibuprofen in April and May she said there was no tears in his shoulder so there was nothing she could do;

5)   On 10/11/19 Slackford submitted a sick-call for his shoulder pain. Dr. McGann saw Slackford on 10/15/19 for Chronic Care and when he attempted to discuss his shoulder pain, Dr. McGann told him to put in a sick-call for his shoulder and she would call him up for that;

6)   On 10/31/19 PA-C Knowles saw Slackford, wherein he told Knowles about his limited range of motion and sharp pain in his shoulder. Knowles suggested that the doctor may approve a Cortisone shot, but not an MRI because they were so expensive. Then on 11/5/19 Knowles told Slackford that Dr. McGann would not approve the Cortisone because Slackford was not buying Ibuprofen from commissary;

7)   Slackford submitted a sick-call on 11/14/19 and 11/26/19. When Dr. McGann saw Slackford on 12/2/19 she told Slackford that she spoke to HSA Murphy and he told her that Slackford thought he was getting a Cortisone shot. Slackford then told Dr. McGann that PA-C Knowles said that she had not approved the Cortisone shot because Slackford was not buying

20

Ibuprofen from the commissary. When Slackford told Dr. McGann that he had receipts for Ibuprofen, McGann said that he could not just buy it once, he had to keep buying it. Slackford informed her that he had purchased Ibuprofen three (3) times, that it was not working, and needed another option. McGann said there were other options on commissary. But when Slackford told her that he was indigent she only prescribed 30 tablets of Naproxin 500mg.

C. The United States violated Medical Malpractice under New Jersey Law by and through H.S. staff.

i. The standard of care for treating shoulder injuries, at a minimum, is to manage the pain through medication or other treatments in a timely manner.

ii. The United States deviated from the standard of care when:

1) They became aware that Slackford had fallen 63" from a top bunk, landing on his right shoulder;

2) On 3/23/19 Slackford complained of pain caused by the fall and H.S. staff prescribed pain medication, but H.S. staff never gave the medication to Slackford;

3) On 4/15/19 Slackford complained of sharp pain with shoulder movement at a level of 10 and H.S. staff only provided 21 tablets of Ibuprofen 600mg;

4) On April 23rd & 29th, May 5th, 15th, 17th & 23rd,

21

June 13th, July 28th & 30th, August 15th, October 11th, 15th & 31st, November 14th & 26th, and December 2nd, 2019, Slackford reported pain to H.S. staff and H.S. staff only provided him with 30 tablets of Naproxin 500mg on December 3rd, 2019 to treat his pain;

5) On March 11th & 24th, April 12, and August 19th, 2020 Slackford reported pain to H.S. staff and H.S. staff only provided him with 7 days worth of Meloxicam on August 21st, 2020 to treat his pain; and

6) On September 17th & 23rd, 2020 Slackford complained of pain in his shoulder and H.S. staff waited until October 22nd, 2020 to provide physical therapy to treat his pain.

iii. The United States' deviation from the standard of care resulted in Slackford's pain, suffering, and loss of enjoyment of life, which was caused by Slackford's continual shoulder pain.

## VI.  RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court grant the following relief:

111.  Declare that Defendant, United States, by and through H.S. Staff, violated New Jersey law against Medical Malpratice.

112.  Declare that Defendant, Dr. Limberkar in his individual and/or official capacity violated Plaintiff's Eighth Amendment

22

right to be free from deliberate indifference to a serious medical need.

113. Declare that Defendant, Dr. S. McGann in her individual and/or official capacity violated Plaintiff's Eighth Amendment right to be free from deliberate indifference to a serious medical need.

114. Award compensatory damages against Defendant, United States for violating New Jersey law against Medical Malpratice through the actions of H.S. staff.

115. Award compensatory and punitive damages against Defendant, Dr. Limberkar in his individual and/or official capacity for violating Plaintiff's Eighth Amendment right to be free from deliberate indifference to a serious medical need.

116. Award compensatory and punitive damages against Defendant, Dr. S. McGann in her individual and/or official capacity for violating Plaintiff's Eighth Amendment right to be free from deliberate indifference to a serious medical need.

117. Award costs associated with the filing and prosecution of this suit.

118. Award any other relief this Court deems just and proper.

23

## VII.   VERIFICATION

119.   I, Kevin Slackford, Plaintiff, declare under the penalty of perjury that the facts stated in this complaint are true and correct to best of my knowledge, and that the facts stated on information and belief are true and correct to the best of my knowledge and belief.

Date:_____9 / 23 /_____, 2021

Kevin Slackford

Respectfully submitted,

Date:____9   23____, 2021

Kevin Slackford

24